Christopher A. Slater, OSB # 97398
cslater@slaterross.com
Michael J. Ross, OSB # 91410
mjross@slaterross.com
SLATER ROSS
Sovereign Hotel, 4th Floor
710 S.W. Madison Street
Portland, Oregon 97205
Telephone: (503) 227-2024
Facsimile: (503) 224-7299
_____

*Local Counsel for Plaintiffs*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| In re GALENA BIOPHARMA INC. DERIVATIVE LITIGATION | Case No.: 3:14-cv-00382-SI LEAD |
| | 3:14-cv-00514-SI |
| | 3:14-cv-00516-SI |
| | 3:15-cv-01465-SI |
| This Document Relates To: ALL ACTIONS. | **PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT, AWARD OF AGREED-TO ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS** |

# TABLE OF CONTENTS

Page

L.R. 7-1 CERTIFICATION ...................................................................................... viii

MOTION ..................................................................................................................... viii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 1

I.  INTRODUCTION .............................................................................................. 1

II.  FACTUAL BACKGROUND ........................................................................... 4

    A.  Procedural History of the Action ......................................................... 4

        1.  The Oregon Action .................................................................... 4

        2.  The Delaware Action ................................................................. 5

        3.  The Oregon Action and Delaware Action Are Coordinated ...... 6

        4.  Settlement Negotiations ............................................................. 7

    B.  Preliminary Approval and Notice to Galena Stockholders ................... 7

III.  TERMS OF THE SETTLEMENT .................................................................. 8

    A.  Financial Consideration ....................................................................... 8

    B.  Corporate Governance Reforms .......................................................... 9

        1.  Reforms to Galena's Option Granting Practices ....................... 9

        2.  Reforms to Galena's Corporate Governance Practices and Policies ........ 10

IV.  THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE FINALLY APPROVED ............................................................. 11

    A.  Legal Standard for Final Settlement Approval ................................... 11

    B.  The Settlement Confers Substantial Monetary and Non-Monetary Benefits Upon Galena and Current Galena Stockholders .................................. 13

    C.  The Settlement Was Reached Through Arm's-Length Bargaining with the Assistance of a Highly Competent and Experienced Mediator ............. 15

    D.  The Strength of Plaintiffs' Claims and the Risk of Continued Litigation ........... 16

E.    The Expense, Complexity and Likely Duration of Further Litigation.................. 19

F.    The Extent of Discovery Completed and the Stage of Proceedings ..................... 22

G.    The Experience and Views of Counsel................................................................. 23

H.    The Reaction of Current Galena Stockholders to the Settlement ......................... 24

V.   THE AGREED-TO FEE AWARD SHOULD BE FINALLY APPROVED AS FAIR
     AND REASONABLE .................................................................................................... 25

A.    Legal Standard ..................................................................................................... 26

B.    The Agreed-to Fee Award Is Fair and Reasonable in Light of the Benefits
      Achieved and Awards in Similar Cases................................................................. 27

C.    The Other Ninth Circuit Factors Support the Unopposed Fee Award.................. 31

      1.    The Risks of Litigation ............................................................................. 31

      2.    The Skill Required and the Quality of Work ............................................. 31

      3.    The Contingent Nature of the Fee and Burdens on Plaintiffs'
            Counsel ..................................................................................................... 32

D.    The Unopposed Fee Award Is Supported by Plaintiffs' Counsel's Lodestar ....... 33

VI.  THE INCENTIVE AWARDS SHOULD BE APPROVED............................................. 35

VII. CONCLUSION............................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AOL Time Warner S'holder Derivative Litig.*,
   2006 WL 2572114 (S.D.N.Y. 2006)................................................................20, 23

*In re Apollo Grp., Inc. Sec. Litig.*,
   2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008)........................................19

*In re Apple Computer, Inc. Derivative Litig.*,
   2008 WL 4820784 (N.D. Cal. Nov. 5, 2006) .......................................................29

*Arnett v. Bank of America, N.A.*,
   2014 WL 4672458 (D. Or. Sept. 18, 2014) ................................................. *passim*

*In re ArthroCare Corp. S'holder Litig.*,
   C.A. No. 9313-VCL, Settlement Hearing and Rulings of the Court
   (Del. Ch. Nov. 6, 2014)........................................................................................29

*In re Atmel Corp. Derivative Litig.*,
   2010 WL 9525643 (N.D. Cal. Mar. 31, 2010).....................................13, 14, 16, 29

*Buccallato v. AT&T Operations, Inc.*,
   2011 WL 3348055 (N.D. Cal. June 30, 2011) ......................................................34

*In re Chickie's & Pete's Wage and Hour Litig.*,
   2014 WL 911718 (E.D. Pa. Mar. 7, 2014).............................................................16

*Chrysler Corp. v. Dann*,
   223 A.2d 384 (Del. 1966) .....................................................................................30

*City of Pontiac Gen. Employees' Ret. Sys. v. Langone*,
   No. 2006-cv-122304, Findings of Fact in Support of Order and Final
   Judgment (Fulton County, Ga. June 10, 2008) ....................................................31

*Clark v. Ecolab Inc.*,
   2010 WL 1948198 (S.D.N.Y. May 11, 2010) .......................................................13

*Cohen v. Beneficial Ind. Loan Corp.*,
   337 U.S. 541 (1949)..............................................................................................21

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005)...................................................................20

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................................34

*Del Monte Foods Co. S'holder Litig.*,
   2011 WL 2535256 (Del. Ch. June 7, 2011)........................................................32

*In re F5 Networks, Inc. Derivative Litig.*,
   No. 06-0794, Order and Final Judgment (W.D. Wash. Jan. 6, 2011)................................ 30-31

*Frederick v. Range Res.-Appalachia, LLC*,
   2011 WL 1045665 (W.D. Pa. Mar. 17, 2011) ........................................................29

*Friedman v. Dolan*,
   2015 WL 4040806 (Del. Ch. June 30, 2015) ........................................................18

*In re General Motors Corp. Derivative Litig.*,
   MDL No. 06-1749, Order Approving Settlement (E.D. Mich. Dec. 22, 2008)........................31

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................21

*In re Google Inc. S'holder Derivative Litig.*,
   No. CV-11-04248, Order (N.D. Cal. Jan. 21, 2015)................................................31

*Gregg v. U.S. Indus., Inc.*,
   887 F.2d 1462 (11th Cir. 1989) ........................................................19

*In re GSI Commerce, Inc. S'holder Litig.*,
   Consol. C.A. No. 6346-VCN (Del. Ch. Nov. 15, 2011) (TRANSCRIPT)............................28

*Harger v. Dept. of Labor*,
   569 F.3d 898 (9th Cir. 2009) ........................................................27

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)........................................................25

*In re Infinity Broad. Corp. S'holders Litig.*,
   802 A.2d 285 (Del. 2002) ........................................................27

*Ingram v. Coca- Cola*,
   200 F.R.D. 685 (N.D. Ga. 2001)........................................................25

*In re Jefferies Group, Inc. S'holders Litig.*,
   2015 WL 3540662 (Del. Ch. June 5, 2015)................................................28, 29

*Johansen v. Combustion Eng'g., Inc.*,
   170 F.3d 1320 (11th Cir. 1999) ........................................................19

*Kamen v. Kemper Fin. Servs.*,
   500 U.S. 90 (1991)........................................................11

PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL -iv-

*Klein v. City of Laguna Beach*,
    810 F.3d 693 (9th Cir. 2016) ....................................................27

*In re Lloyd's Am. Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ....................................17

*Maher v. Zapata Corp.*,
    714 F.2d 436 (5th Cir. 1983) ..............................................1, 17, 21, 30

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983) ....................................................19

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ....................................................22, 23

*In re MRV Commc'ns, Inc. Derivative Litig.*,
    2013 WL 2897874 (C.D. Cal. June 6, 2013) ................................. *passim*

*In re NVIDIA Corp. Derivative Litig.*,
    2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Dec. 22, 2008) ................ *passim*

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.3d 615 (9th Cir. 1992) ....................................................12, 13, 25

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................17, 24

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ....................................................1, 16

*Plumbers Local No. 137 Pension Fund v. Davis*,
    2012 WL 104776 (D. Or. Jan. 11, 2012) ....................................11

*Prezant v. DeAngelis*,
    636 A.2d 915 (Del. 1994) ....................................................11, 12

*In re Rambus Inc. Derivative Litig.*,
    2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ................................14, 26

*Ret. Sys. v. Citrix Sys, Inc.*,
    2001 WL 1131364 (Del. Ch. Sept. 19, 2001) ............................26

*Roberti v. OSI Sys., Inc.*,
    2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ............................24, 33, 34

*Ryan v. Gifford*,
    2009 WL 18143 (Del. Ch. Jan. 2, 2009) ....................................13, 14, 20

*Ryan v. Gifford*,
    935 A.2d 258 (Del. Ch. 2007) .................................................................18

*Seinfeld v. Coker*,
    847 A.2d 330 (Del. Ch. 2000) .................................................................34

*Seinfeld v. Robinson*,
    246 A.D.2d 291 (N.Y. App. 1st Dep't 1998) ..........................................30

*Silverberg v. Gold*,
    2013 WL 6859282 (Del. Ch. Dec. 31, 2013) ..........................................19

*In re SmithKline Beckman Corp. Sec. Litig.*,
    751 F. Supp. 525 (E.D. Pa. 1990) ...........................................................20

*In re Tyson Foods, Inc. Consol. S'holder Litig.*,
    919 A.2d 563 (Del. Ch. 2007) ...........................................................18, 28

*Unite Nat'l Ret. Fund v. Watts*,
    2005 WL 2877899 (D.N.J. Oct. 29, 2005) ..............................................31

*Unitrin, Inc. v. Am. Gen. Corp.*,
    651 A.2d 1361 (Del. 1995) ......................................................................27

*Velez v. Novartis Pharm.*,
    2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ........................................21

*Villanueva v. Morpho Detection, Inc.*,
    2015 WL 4760464 (N.D. Cal. Aug. 12, 2015) ........................................15

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...........................................27, 28, 33, 34

*In re Warner Commun's Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ...................................32

*Warner v. Lesar*,
    No. 2011-09567, Order Approving Settlement and Judgment
    (Tex. Dist. Ct., Harris Cnty. Oct. 1, 2012) .............................................31

*Young v. Polo Retail, LLC*,
    2007 WL 951821 (N.D. Cal. Mar. 8, 2007) ............................................33

**Statutes**

8 *Del. C.* § 102(b)(7) ......................................................................................17

8 *Del. C.* § 220 ..................................................................................................5

**Rules**

Fed. R. Civ. P. 23.1(c) ...................................................................................................11

**Other Authorities**

Deutsche Bank, *Beyond the Numbers, Materiality of Corporate Governance*
(2005) ........................................................................................................................15

Lawrence D. Brown & Marcus L. Caylor, *Corporate Governance and Firm
Performance* (2004) .................................................................................................15

McKinsey & Company, *Global Investor Opinion Survey on Corporate
Governance* (2002) ..................................................................................................15

McKinsey & Company, *Putting a Value on Board Governance* (1996) ......................................15

Paul A. Gompers, *et al.*, *Corporate Governance and Equity Prices,*
Q.J. ECON. 118(1) (2003) ........................................................................................15

## **L.R. 7-1 CERTIFICATION**

Pursuant to Local Rule 7-1, counsel for all parties have conferred. No party opposes the relief requested in the underlying Motion.

## **MOTION**

Plaintiffs Jeffrey Klein ("Klein"), David W. Fuhs ("Fuhs"), Pratik Rathore ("Rathore"), and Harold Spradling ("Spradling" and collectively with Klein, Fuhs, and Rathore, "Plaintiffs"), respectfully submit this unopposed motion for an order finally approving the proposed settlement of the above-captioned stockholder derivative action (the "Action"), the award of agreed-to attorneys' fees and reimbursement of expenses pursuant to Federal Rule of Civil Procedure 54, and incentive awards for certain of the Plaintiffs (the "Motion"). This unopposed Motion is based on the following Memorandum of Points and Authorities submitted in support thereof; the Declaration of Brett D. Stecker in support thereof ("Stecker Decl.") and the exhibits attached thereto; the pleadings, records, and papers on file in this Action; such other papers as may be filed at or before the hearing on this Motion; and oral argument of counsel and any other matters that properly may be brought before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs and Plaintiffs' Counsel are very pleased to present this Settlement[1] for the Court's final approval.  As stated by the U.S. Court of Appeals for the Ninth Circuit, "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful."[2]  Plaintiffs and Plaintiffs' Counsel respectfully submit that this Settlement represents the "rare" example of a successful derivative suit because it recoups a significant amount of the alleged damages and is an excellent result for Galena and Current Galena Stockholders.

The Settlement fully resolves this Action brought derivatively under Delaware law on behalf of nominal defendant Galena against certain of Galena's current and former officers and directors for alleged breaches of fiduciary duties, unjust enrichment and other misconduct.[3]  Specifically, the Action arises from allegations that certain officers and/or directors of Galena secretly hired a stock promotion firm to "pump up" Galena's stock price, so that they could later sell Galena stock while in possession of non-public information and at a time when Galena stock was trading at artificially inflated prices.  Plaintiffs also allege that certain of Galena's directors used inside information to improperly grant stock options to themselves and fellow officers

---

[1] Unless otherwise indicated, all capitalized terms shall have the same definitions as set forth in the Amended Stipulation and Agreement of Settlement dated February 1, 2016 (the "Stipulation") and filed with the Court on the same day.

[2] *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (affirming approval of derivative settlement); *accord Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) ("Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'").

[3] The Settlement also resolves related derivative litigation pending in Multnomah County Circuit Court, captioned *Fagin v. Ahn, et al.*, No. 140202384 (Or. Cir. Ct.) and *Zhang v. Hillsberg, et al.*, No. 140403987 (Or. Cir. Ct.).  In a February 4, 2016 letter, the plaintiffs to those actions informed this Court that they "agreed to coordinate [their] efforts with [Plaintiffs]" in this Action and supported Plaintiffs' motion for preliminary approval.

and/or directors which violated Delaware law because such options were spring-loaded, *i.e.*, granted just prior to the release of material information that was reasonably expected to drive the market price of Galena stock higher, and also failed to comply with the statutory requirements of the Delaware General Corporation Law ("DGCL").  The Settlement is the culmination of more than two years of contentious litigation and extensive, arm's-length settlement negotiations amongst experienced counsel for the Parties with the substantial assistance and oversight of an experienced mediator, the Honorable Layn R. Phillips (Ret.).

The Settlement is eminently fair, reasonable and adequate to Galena and Current Galena Stockholders, as it confers both substantial monetary and non-monetary benefits on Galena. Plaintiffs respectfully submit that this is an uncommonly good result, as most derivative settlements typically only include therapeutic relief, and have no financial component.  First, the Settlement requires the payment of $15 million to Galena by its D&O insurance carriers.  In addition, as part of the Settlement, a total of 1.2 million stock options which Plaintiffs allege were improperly granted to the director defendants have been cancelled in their entirety.  Further, defendant Mark J. Ahn ("Ahn"), Galena's former Chief Executive Officer ("CEO"), forfeited over $800,000 of contractual severance payments due to him and over 1.1 million stock options with an intrinsic value of approximately $503,062.  In total, the Settlement provides Galena with financial consideration worth over $16.3 million, which represents approximately 43% of the Company's reported cash and cash equivalents as of February 2016.

Second, the Settlement requires the implementation of significant corporate governance reforms at Galena specifically designed to protect against future instances of wrongdoing as alleged in the Action.  These measures include reforms to Galena's stock option granting practices, the appointment of a new independent director, reforms to the Board and management

structure and policies, the adoption of a formal Enterprise Risk Management ("ERM") program, and other reforms designed to make Galena's officers and directors more effective and responsive fiduciaries.  In sum, the Settlement is an outstanding package of relief that provides Galena with substantial and immediate financial benefits as well as significant non-monetary benefits which will provide value to Galena and its stockholders for years to come.  Accordingly, the Settlement, negotiated at arm's-length and in good faith by the Parties, deserves final approval by this Court as it is undoubtedly fair, reasonable and adequate.

As part of the Settlement and in recognition of the substantial benefits conferred by Plaintiffs' Counsel on Galena and Current Galena Stockholders, the Parties, with the assistance of Judge Phillips, negotiated the amount of attorneys' fees and expenses that Galena would pay to Plaintiffs' Counsel.  As a result of those negotiations, the Parties accepted Judge Phillips' mediator's proposal, and with the approval of the Board in an exercise of its independent business judgment, Galena has agreed to pay Plaintiffs' Counsel $5 million for their fees and expenses.  The Fee Award was negotiated after the principal terms of the settlement were agreed-to and will be paid by Galena's D&O insurance carriers.  The Fee Award is being paid separate and apart from the $15 million payment to the Company, thus bringing the total financial benefit of the Settlement to more than $21 million.  The agreed-to Fee Award is clearly supported by Plaintiffs' Counsel's significant results achieved through their investigation, litigation and negotiation of the Settlement.  Additionally, the nominal Incentive Awards in the amount of $5,000 each are respectfully requested for certain Plaintiffs identified below, payable from the Fee Award.  As of the date of this submission, Plaintiffs' Counsel are unaware of any objections to the Settlement, the Fee Award or Incentive Awards, which is indicative of their fairness and reasonableness.

For all the reasons set forth herein, including the outstanding results obtained for Galena and Current Galena Stockholders, Plaintiffs respectfully submit that the Court should finally approve the Settlement, including the negotiated Fee Award, as it is undoubtedly fair, reasonable and adequate in light of the substantial benefits that flow to Galena and as compared with the significant challenges faced by Plaintiffs from the continued prosecution of the Action, and the potential recovery that could have possibly been achieved at any trial.

## II.    FACTUAL BACKGROUND

### A.    Procedural History of the Action

#### 1.    The Oregon Action

The Oregon Action was initiated in this Court in March 2014 when the Oregon Plaintiffs filed complaints on behalf of Galena alleging breaches of fiduciary duty against the Board which were later consolidated on April 11, 2014.  *See* Stecker Decl. ¶22.  Defendants filed the Motion to Dismiss the Oregon Action that was subsequently withdrawn by Defendants.  *Id*.  On June 10, 2014, the Oregon Plaintiffs filed an amended complaint.  *Id*. ¶23.  On September 11, 2014, Galena filed the Motion to Stay, which the Court denied on October 22, 2014.  *Id*. ¶¶23-24.

Defendants filed the Second Motion to Stay, pending the resolution of the Federal Securities Action[4] and in deference to the Delaware Action.  *Id*. ¶25.  Simultaneously, Defendants filed the Second Motion to Dismiss the Oregon Action.  *Id*.  On February 4, 2015, the Court entered orders and opinions granting in part and denying in part the Second Motion to Dismiss and Second Motion to Stay.  *Id*. ¶26.  In response to the Second Motion to Stay, the Court declined to stay the Oregon Action in favor of the related Delaware Action, but temporarily stayed discovery pending the Court's decision on the motion to dismiss in the

---

[4] The Federal Securities Action refers to the case currently pending in the Federal Court captioned *In Re Galena Biopharma, Inc. Secs. Litig.*, No 14-cv-00367-SI (D. Or.).

Federal Securities Action. *Id*. The Court also declined to dismiss the majority of the claims challenged in the Second Motion to Dismiss and granted the Oregon Plaintiffs leave to amend the claims that were dismissed. *Id*. The Oregon Plaintiffs filed their Verified Second Amended Consolidated Shareholder Derivative Complaint on March 6, 2015. *Id*.

### 2.    The Delaware Action

In March 2014, the Delaware Plaintiffs each served separate demands pursuant to 8 *Del. C*. § 220 ("Section 220") to inspect Galena's books and records related to stock option grants made to certain insiders in November 2013, stock sales made by certain insiders in January 2014, and related matters. *Id*. ¶27. On March 18, 2014, Plaintiff Fuhs filed the 220 Action in the Delaware Court of Chancery, and from April 14, 2014 to May 29, 2014, Galena produced on a rolling basis documents responsive to the 220 Demands. *Id*. Ultimately, Galena produced approximately 4,660 pages of documents. *Id*.

On June 20, 2014, the Delaware Plaintiffs filed a Verified Stockholder Derivative Complaint in the Delaware Court of Chancery on behalf of Galena, alleging breaches of fiduciary duty by Galena's officers and directors. *Id*. ¶28. On August 12, 2014, Galena filed the Delaware Stay Motion and thereafter the Delaware Plaintiffs stipulated to a stay of the Delaware Action until November 24, 2014, which the Delaware Court of Chancery granted on October 13, 2014. *Id*. On November 14, 2014, after this Court declined to stay the proceedings before it based on the SLC investigation, the Delaware Plaintiffs filed a motion seeking to vacate the stay of the Delaware Action under their reservation of rights in the Stay Order. *Id*. ¶29. The Delaware Plaintiffs agreed to voluntarily dismiss the Delaware Action and to file a complaint in this Court in order to coordinate their efforts with the Oregon Plaintiffs. *Id*. ¶30. Fuhs and Spradling voluntarily dismissed the Delaware Action in February 2015. *Id*.

### 3.    The Oregon Action and Delaware Action Are Coordinated

On August 4, 2015, Plaintiffs Fuhs and Spradling filed a Verified Stockholder Derivative Complaint and an Unopposed Motion to File Verified Stockholder Derivative Complaint Under Seal in order to consolidate their action with the Oregon Action. *Id.* The Court consolidated the pending actions on August 19, 2015, and, on August 31, 2015, the Court granted Plaintiffs' Unopposed Motion to File the operative Complaint. *Id.*

Plaintiffs filed the Complaint on August 28, 2015 which alleges, *inter alia*, that Galena's directors and senior officers unlawfully abused their positions as fiduciaries of Galena for their own personal financial gain. *Id.* ¶31. Specifically, the Complaint alleges that the Individual Defendants manipulated and artificially pumped up Galena's stock price in order to later dump a significant portion of their Galena stock, including improperly granted stock option awards, when Galena stock was trading at artificially inflated prices. *Id.* The Complaint also alleges that the Individual Defendants improperly used inside information to spring-load stock options to themselves, *i.e.*, options that are granted just prior to a company's release of material information reasonably expected to drive the market price of the shares higher, and in their haste to grant the options, failed to comply with the requirements of the DGCL. *Id.* The Complaint alleges seven counts: (1) breach of fiduciary duty for disseminating false and misleading information; (2) invalidity of stock options; (3) breach of fiduciary duty for insider selling and/or granting spring-loaded stock option awards; (4) unjust enrichment in connection with insider selling and/or receipt of spring-loaded stock options; (5) breach of fiduciary duty in connection with the enactment and attempted enforcement of the forum selection clause; (6) breach of fiduciary duty in connection with excessive 2013 stock option awards and cash compensation to the outside directors; and (7) unjust enrichment in connection with excessive 2013 stock option awards. *Id.*

### 4.    Settlement Negotiations

On May 8, 2015, in advance of the Mediation to be held before Judge Phillips, Plaintiffs sent a joint settlement demand to Defendants.  *Id.* ¶32.  As a precondition to attending the Mediation, Plaintiffs required Defendants to produce certain non-public documents, including documents produced to the U.S. Securities and Exchange Commission ("SEC") and reviewed by the Board's Special Committee and SLC.  *Id.*  As a result, Defendants produced nearly 24,000 documents (totaling approximately 53,000 pages) to Plaintiffs.  *Id.*  The full-day Mediation took place in New York City on September 19, 2015.  *Id.* ¶33.  While the Mediation did not result in a resolution of the Action, the Parties' submissions and other communications in connection with the Mediation served as the basis for subsequent negotiations, also overseen by Judge Phillips.  *Id.* With the substantial assistance of Judge Phillips, the Parties reached an agreement in principle to settle the Oregon Action and executed a term sheet dated December 4, 2015 and subsequently negotiated and executed the Stipulation on February 1, 2016.  *Id.*

### B.    Preliminary Approval and Notice to Galena Stockholders

On February 4, 2016, the Court entered the Preliminary Approval Order preliminarily approving the Settlement and approving the proposed Notice and Summary Notice.  *Id.* ¶5; Preliminary Approval Order [ECF No. 115].  The Court also set an April 7, 2016 deadline for any Current Galena Stockholder to object to the Settlement.  *Id.*  Pursuant to the terms of the Stipulation, and in accordance with the Preliminary Approval Order, Galena: (i) filed with the SEC a Form 8-K on February 16, 2016 that contains the contents of the Summary Notice, attached a copy of the Stipulation to the 8-K and provided a link in the 8-K to the Stipulation and Notice that is posted on the Investor Relations portion of Galena's website; (ii) issued a press release that contains the contents of the Summary Notice on February 16, 2016; and (iii) published a copy of the Summary Notice one time in *Investor's Business Daily*, *The Oregonian*,

and *The Wall Street Journal* on February 17, 2016.  *Id.*   The Notice and Summary Notice set forth, *inter alia*, the date and location of the final Settlement Hearing, the history of the Action, the Parties' contentions, the reasons for the Settlement, the claims that will be released if the Settlement is approved, the Fee Award and Incentive Awards sought by Plaintiffs' Counsel, the procedure for objecting to the Settlement, including objecting to the Fee Award and Incentive Awards, and the deadline to file such objections.  *See* Preliminary Approval Order, Exhibits C and D.  As of the date of this submission, Plaintiffs' Counsel is unaware of any objections.  *Id.*

## III.   TERMS OF THE SETTLEMENT

### A.   Financial Consideration

The Settlement includes several valuable financial components.  First, the Settlement requires a $15 million cash payment to be paid to Galena by the Individual Defendants' D&O insurance carriers.  *See* Stipulation ¶2.1.  Second, the Settlement requires the cancellation of 1.2 million challenged stock options granted to director defendants Hillsberg, Kriegsman, Nisi, Galliker, Chin and Ashton.  *Id* at ¶2.2.  Third, defendant Ahn, Galena's former CEO, forfeited the following benefits as part of the Settlement: (1) $600,000 in salary; (2) $250,000 in bonus; (3) 1,181,250 stock options with an intrinsic value of approximately $503,062 (as of August 21, 2014, the date of the public announcement of Ahn's resignation); and (4) health related costs valued between $24,000 and $30,000.  *Id* at ¶2.4.  Finally, as part of the Settlement, Galena agreed to cancel the outstanding stock options awarded to Lidingo[5] in August 2013.  *Id*. at ¶2.4.

---

[5] On September 25, 2014, Galena issued the Special Committee's report publicly, which concluded, *inter alia,* that Lidingo "paid bloggers to write promotional articles about Galena and that the Company was aware of this fact" and that in August 2013, Lidingo was granted 250,000 Galena stock options as compensation, in violation of Galena's policies.  According to the Special Committee report, as of July 15, 2014, Lidingo had over 100,000 options outstanding.

### B.      Corporate Governance Reforms

In addition to the significant and immediate financial benefits Galena will receive as a result of the Settlement, the Settlement provides for valuable corporate governance reforms which are specifically tailored to address the allegations in the Action and to improve Galena's overall corporate governance structure.  *See* Stipulation ¶2.3, Exhibit A.

### 1.      Reforms to Galena's Option Granting Practices

The Settlement includes significant reforms to Galena's stock option granting practices which are specifically designed to prevent the type of wrongdoing that gave rise to the Action. For example, the Settlement requires options to be granted on pre-set dates that will be determined prior to the end of the first quarter of the calendar year in which the options are to be granted, and the Compensation Committee must disclose to Galena stockholders the methods used to determine those pre-set dates in the fiscal year's proxy statement in which the method is established.  *See* Stipulation, Exhibit A at I.A.  The granting of options on pre-set dates will not only help prevent spring-loading in the future, but also will help prevent other types of potential misconduct relating to the manipulation of option grants.  The other reforms to the option granting practices include:

- Prohibiting stock option grants from being made through unanimous written consent (Stipulation, Exhibit A at I.B);

- Requiring the Compensation Committee to determine grantees, amounts, dates and prices of stock options and prohibiting changes after the grant is approved (Stipulation, Exhibit A at I.C);

- Requiring outside counsel or the Company's General Counsel to participate in any Board or committee meetings at which stock options are granted and meeting minutes to be drafted and circulated within 30 days following the meeting (Stipulation, Exhibit A at I.D);

- Requiring the exercise price of stock options to be no less than the Company's closing stock price on the grant date (Stipulation, Exhibit A at I.E);

- Prohibiting the lowering of exercise prices or exchanging options with lower exercise prices (Stipulation, Exhibit A at I.F);

- Requiring strict record keeping with respect to option grants (Stipulation, Exhibit A at I.G); and

- Prohibiting the right to extend vesting of stock options or otherwise modify the terms of the grant unless specific criteria are met (Stipulation, Exhibit A at I.H).

### 2. Reforms to Galena's Corporate Governance Practices and Policies

The Settlement further includes reforms to various segments of Galena's corporate governance practices and policies. For example, the Settlement implements changes at the Board level, including: (1) the appointment of one new independent director as of the 2016 Annual Meeting (Stipulation, Exhibit A at II.N); (2) revisions to the Audit Committee Charter (Stipulation, Exhibit A at II.D and I); and (3) the appointment of a new chair of the Compensation Committee (Stipulation, Exhibit A at III.E). As a result of the Settlement, Board approval is required for all contracts greater than $200,000 as the matrix for the authority to conduct business was modified (Stipulation, Exhibit A at III.A).

The Settlement also includes reforms to Galena's management, including the appointment of a new CEO (Stipulation, Exhibit A at III.D) and the hiring of a new General Counsel, Tom Knapp (Stipulation, Exhibit A at III.C). The new General Counsel has additional oversight responsibilities as a result of the Settlement, including serving as Galena's Trading Compliance Officer pursuant to Galena's Insider Trading Policy (Stipulation, Exhibit A at II.A-B and F).

Finally, the Settlement requires reforms to Galena's Insider Trading Policy (Stipulation, Exhibit A at II.A-B), the adoption of a formal ERM program, which will identify and address corporate risk (Stipulation, Exhibit A at II.C), training for personnel in the areas associated with

IR/PR cross-functionality (Stipulation, Exhibit A at II.J), the retention of an independent Compensation Consultant (Stipulation, Exhibit A at II.L) and the deletion of Galena's forum selection clause in its bylaws (Stipulation, Exhibit A at II.O).

The Settlement's prophylactic governance reforms allow Galena not only to offer more transparency to investors, but also help the Company avoid future litigation.  Together, the financial benefits and governance reforms achieved by Plaintiffs through this Settlement are considerable and will provide immediate relief in addition to ongoing valuable benefits to Galena and its stockholders for years after this Settlement is approved.  In sum, the Settlement confers substantial benefits upon Galena and Current Galena Stockholders and is a very favorable resolution for Galena of derivative litigation of substantial complexity.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE FINALLY APPROVED

### A.    Legal Standard for Final Settlement Approval

"There is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy."  *In re NVIDIA Corp. Derivative Litig.*, 2009 U.S. Dist. LEXIS 24973, at *6 (N.D. Cal. Dec. 22, 2008).[6]  "There is an overriding public interest in settling and quieting litigation."  *Id*.  "Because shareholder derivative actions are notoriously difficult and unpredictable . . . settlements are favored."  *Id*.

Fed. R. Civ. P. 23.1(c) requires court approval of a settlement of a derivative action.  Fed. R. Civ. P. 23.1(c); *In re MRV Commc'ns, Inc. Derivative Litig.*, 2013 WL 2897874, at *2 (C.D. Cal. June 6, 2013); *Prezant v. DeAngelis*, 636 A.2d 915, 921-22 (Del. 1994).[7]  The general

---

[6] All citations and internal quotations marks are omitted and emphasis is supplied herein, unless otherwise indicated.

[7] Galena is subject to Delaware corporate law, which set the substantive law in this Action. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90 (1991).  Courts in this district look to Delaware law on corporate law issues.  *See Plumbers Local No. 137 Pension Fund v. Davis*, 2012 WL 104776,

standard for final approval of a proposed derivative settlement is whether the settlement is

"fundamentally fair, adequate and reasonable." *Id.* The Ninth Circuit considers the following

factors in evaluating the fairness of a derivative settlement: (1) the strength of the plaintiff's

case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount

offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5)

the experience and views of counsel; and (6) the reaction of the stockholders to the proposed

settlement. *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *8-9 (citing *Officers for Justice v. Civil

Serv. Comm'n*, 688 F.3d 615, 625 (9th Cir. 1992)); *MRV*, 2013 WL 2897874, at *2.[8] "[These]

factors are not exclusive, and one factor may deserve more weight than the others depending on

the circumstances. In some instances, one factor alone may prove determinative in finding

sufficient grounds for court approval." *MRV*, 2013 WL 2897874, at *2. The Ninth Circuit has

cautioned that:

> "the settlement or fairness hearing is not to be turned into a trial or
> rehearsal for trial on the merits. Neither the trial court nor this court is to
> reach any ultimate conclusions on the contested issues of fact and law
> which underlie the merits of the dispute, for it is the very uncertainty of
> outcome in litigation and avoidance of wasteful and expensive litigation
> that induce consensual settlements. The proposed settlement is not to be
> judged against a hypothetical or speculative measure of what ***might*** have
> been achieved by the negotiators."

*Officers for Justice*, 688 F.3d at 625 (emphasis in original). Therefore, in exercising its

discretion, "the court's intrusion upon what is otherwise a private consensual agreement

negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

---

at *3 n.3 (D. Or. Jan. 11, 2012). Accordingly, Plaintiffs rely on both Delaware and federal
authority throughout this Motion.

[8] Because this Action is a derivative action, rather than a class action, Plaintiffs' analysis will
disregard two of the factors - the risk of maintaining class action status throughout the trial and
the presence of a governmental participant - as they are inapplicable to the case *sub judice*.

reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Clark v. Ecolab Inc.*, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010).

Based upon the record in this Action and the valuable monetary and non-monetary relief achieved by Plaintiffs in the Settlement for the benefit of the Company, these factors weigh squarely in favor of granting final approval of the Settlement.

### B.   The Settlement Confers Substantial Monetary and Non-Monetary Benefits Upon Galena and Current Galena Stockholders

"The principal factor to be considered in determining the fairness of a settlement concluding a shareholders' derivative action is the extent of the benefit to be derived from the proposed settlement by the corporation, the real party in interest." *In re Atmel Corp. Derivative Litig.*, 2010 WL 9525643, at *12 (N.D. Cal. Mar. 31, 2010). As a result of the filing, prosecution and settlement of this Action, the Individual Defendants' D&O insurance carrier has made a $15 million payment to Galena, defendant Ahn forfeited over $1.3 million in salary, bonus and stock options, the director defendants forfeited a total of 1.2 million stock options, and outstanding stock options awarded to Lidingo will be cancelled.   *See* Stipulation ¶¶2.1, 2.2, 2.4. The financial relief to Galena is substantial, immediate, and certain, and will be available much sooner than any potential judgment if the Action proceeded to trial. *See, e.g., Ryan v. Gifford*, 2009 WL 18143, at *10 (Del. Ch. Jan. 2, 2009) (approving settlement of derivative action which provided financial relief for the company, because financial relief "provides benefits to [the company] that are substantial and certain."); *see also NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *6, 11 (approving derivative settlement that provided for, among other things, "significant

financial benefits valued at $15.8 million," including a cash payment of $8 million); *Atmel*, 2010 WL 9525643, at *12 (approving derivative settlement providing for "a cash payment of $9.65 million to Atmel" which "exceeds the average recovery in shareholder derivative litigation").

As part of the Settlement, Galena is also required to implement a comprehensive series of important and meaningful corporate governance reforms.  *See* Stipulation, Exhibit A.  These reforms are directly related and responsive to the allegations and claims asserted in the Action.  Specifically, the option granting reforms will allow Galena to continue using stock options to incentivize and reward performance of Galena employees, while ensuring that the award process is governed by specific criteria which are transparent, *i.e.*, granted on pre-set dates, disclosed to stockholders and in accord with proper granting practices.[9]  The various other reforms at both the Board and management levels will leave Galena as a better-governed company with stronger internal controls and greater independent oversight, and are designed to make Galena's directors and officers more effective representatives of the stockholders.  These reforms confer substantial benefits upon Galena and Current Galena Stockholders and, importantly, could not have been obtained even if Plaintiffs prevailed at trial.  *See, e.g., NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *11; *MRV*, 2013 WL 2897874, at *4; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009).  While it is difficult to assign a specific monetary value to these reforms, similar reforms have formed the basis of many derivative settlements and expert studies have long shown that strong corporate governance increases the market value of a company and

---

[9] *See Ryan*, 2009 WL 18143, at *10 (recognizing that the company "will also receive the benefit of substantial corporate governance changes designed to address the problems that led to the backdating of options. These changes are designed to assure that Maxim's options grant process is transparent and properly monitored, while still providing Maxim with the flexibility to use options to incentivize its employees."); *Atmel*, 2010 WL 9525643, at *12 ("these [corporate governance] reforms are designed to prevent future improperly backdated options as well as other acts of corporate misbehavior. . .  at the very least, potential buyers of Atmel stock likely will view such reforms as an additional reason to purchase the stock.").

that "the influence of corporate governance standards on a company's long-term equity performance is beyond doubt."[10]

In short, the Settlement is an outstanding resolution for Galena and Current Galena Stockholders in a case of substantial complexity and cost, and it provides Galena immediate monetary benefits and strong governance and compliance enhancements which will help the Company avoid future litigation.  Thus, the Settlement should be approved.

### C.    The Settlement Was Reached Through Arm's-Length Bargaining with the Assistance of a Highly Competent and Experienced Mediator

A settlement enjoys a presumption of fairness if it "is recommended by … counsel after arm's-length bargaining."  *Villanueva v. Morpho Detection, Inc.*, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015).  *See also MRV*, 2013 WL 2897874, at *2 ("The involvement of experienced [ ] counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery ha[s] taken place create a presumption that the agreement is fair.").  Here, the Settlement was reached after extensive arm's-length negotiations between sophisticated counsel for the Parties.  These negotiations began approximately 15 months ago, and included Plaintiffs' review of approximately 24,000 non-public documents (53,000 pages) in advance of the Mediation, a full-day in-person mediation session with Judge Phillips, a well-

---

[10] Deutsche Bank, *Beyond the Numbers, Materiality of Corporate Governance* (2005).  *See also* Lawrence D. Brown & Marcus L. Caylor, *Corporate Governance and Firm Performance* (2004) (concluding that "poorly governed firms… have lower operating performance, lower valuations, and pay out less cash to their shareholders, while better governed firms have higher operating performance, higher valuations, and pay out more cash to their shareholders"); Paul A. Gompers, *et al.*, *Corporate Governance and Equity Prices*, Q.J. ECON. 118(1), at 107-155 (2003) (finding that firms with stronger governance traded at a "corporate governance premium" and had higher firm value, higher profits, higher sales growth, and lower capital expenditures); McKinsey & Company, *Global Investor Opinion Survey on Corporate Governance* (2002) (finding that 75% of institutional investors responded to a survey stating that board practices are at least as important to them as financial performance and 80% responding that they would pay more for a company with good governance than bad governance); McKinsey & Company, *Putting a Value on Board Governance*, (1996) (concluding that institutional investors were willing to pay an average of 11% more for well governed companies).

respected and experienced mediator who is well-versed in the field of complex stockholder litigation, and numerous telephonic follow-up meetings with Judge Phillips for several months following the Mediation.  *See* Stecker Decl. ¶17.  Indeed, "Judge Phillips' participation weighs considerably against any inference of a collusive settlement." *Atmel*, 2010 WL 9525643, at *13. This factor thus weighs in favor of approving the Settlement.  *See, e.g., MRV*, 2013 WL 2897874, at *5 (derivative settlement finally approved where "the negotiations and mediation were conducted at arm's-length and were in no way collusive"); *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *10-11 (approving settlement where "the parties engaged in significant negotiations, including at least four formal mediation sessions, and the parties were assisted by an experienced mediator in reaching the Settlement," which "weighs considerably against any inference of a collusive settlement"); *Atmel*, 2010 WL 9525643, at *13 ("the involvement of multiple counsel from different firms suggests a lack of collusion").

Furthermore, the Parties did not begin negotiating the Fee Award until after all of the substantive terms of the Settlement were agreed upon.  *See* Stecker Decl. ¶19.  This factor further demonstrates the fairness of the arm's-length Settlement because "the amount of attorneys' fees could not have affected the amount of Plaintiffs' recovery." *In re Chickie's & Pete's Wage and Hour Litig.*, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014).

### D. The Strength of Plaintiffs' Claims and the Risk of Continued Litigation

Plaintiffs believed and continue to believe that their claims are meritorious.  Considering that their allegations were based in substantial part upon Galena's own books and records, Plaintiffs believe they had a strong likelihood of establishing liability at trial, at least as to the director defendants on certain of their claims.  However, had Plaintiffs continued to litigate, there was a real risk that Plaintiffs would not have been successful.  *See, e.g., Pac. Enters.*, 47 at 378

(affirming approval of derivative settlement and noting that "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful"); *Maher*, 714 F.2d at 455 ("Settlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable."). Although Plaintiffs defeated the Second Motion to Dismiss, Plaintiffs still faced considerable future challenges. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("Although Plaintiffs' case has survived two motions to dismiss…it still faces numerous hurdles.").

As Defendants noted in the Second Motion to Dismiss, to prevail at trial, Plaintiffs would have had to prove that the director defendants (Ahn, Hillsberg, Chin, Galliker, Kriegsman, Nisi and Ashton) committed non-exculpated breaches of fiduciary duty. *See* ECF No. 52, at 10 n.6. Galena maintains an exculpatory provision pursuant to 8 *Del. C.* § 102(b)(7) which "eliminate[s] or limit[s] the personal liability of a director to a corporation or its stockholders for monetary damages" for breaches of the duty of care. Thus, in order to recover damages in this Action, Plaintiffs would have had to prove that the director defendants breached the duty of loyalty – a difficult proposition.[11] Even had Plaintiffs proved a non-exculpated breach of fiduciary duty, the question of whether Galena suffered actual damages related to the breach would have been hotly contested, and subject to "dueling experts."[12] Absent Settlement, Plaintiffs faced the real possibility that, even if they were successful at trial, they would obtain only a modest recovery for the Company.

---

[11] Although the Court noted in its Opinion and Order on Motion to Dismiss that "Plaintiffs have *alleged* sufficient facts stating a non-exculpated claim against Defendants," ECF No. 76 at 15, there is no guarantee that Plaintiffs could *prove* at trial that Defendants breached their fiduciary duty of loyalty.

[12] *See, e.g., In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *21 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages ... is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable.").

Indeed, had the Action gone to trial, Plaintiffs would have faced significant risks proving their insider trading and spring-loading option claims.  With respect to the spring-loading option claims, as to the director defendants, the issue would be whether the option grants were entirely fair to Galena.  *See, e.g., In re Tyson Foods, Inc. Consol. S'holder Litig.*, 919 A.2d 563, 592-93 (Del. Ch. 2007).  As to the officer defendants who were not Board members and did not approve spring-loaded stock options (Schwartz and Dunlap), Plaintiffs would be required to prove they acted in bad faith by receiving spring-loaded stock options, which would have been difficult as these individuals were not involved in approving the awards.[13]  As a result of the Settlement and Plaintiffs' efforts, the alleged improperly-granted options received by the director defendants have been cancelled. Thus, the Settlement fully remedies the director defendants' alleged breaches of duty in connection with the option grants by eliminating any unjust enrichment they received. The only challenged options which are not subject to the Settlement are the collective 450,000 options granted to officer defendants Schwartz and Dunlap, who did not participate in granting of the options.  As to those defendants, Plaintiffs would be required to prove that they each acted in bad faith by receiving spring-loaded options.  Therefore, after considering that risk when compared to the significant value obtained for Galena as a result of the Settlement, Plaintiffs agreed to the Settlement which does not include cancelling these individuals' stock options.  Indeed, proving liability as to all Defendants was not assured and involved substantial risks. The Settlement, however, eliminates those risks and provides a complete victory against the director defendants on these claims.

---

[13] *See Friedman v. Dolan*, 2015 WL 4040806, at \*9 (Del. Ch. June 30, 2015) ("[Defendants] did not award themselves compensation, and there is no basis in the complaint to infer that either of the two engaged in behavior that coerced or influenced the Compensation Committee Defendants to act inconsistently with their responsibilities as directors."); *Ryan v. Gifford*, 935 A.2d 258, 270 (Del. Ch. 2007) (the receipt of "backdated options without any additional allegation of knowledge that the options were wrongfully granted is not a breach of fiduciary duty.").

With respect to their insider trading claims, Plaintiffs would have to prove that the Individual Defendants (except Dunlap) possessed material, nonpublic information and that they used that information improperly by making trades because they were motivated, in whole or in part, by the substance of that information. *Silverberg v. Gold*, 2013 WL 6859282, at *10 (Del. Ch. Dec. 31, 2013). This would be no easy task. *See id.* at *14 ("insider trading claims depend importantly on proof that the selling defendants acted with scienter."). Further, Plaintiffs allege that the trading proceeds totaled nearly $16.1 million. As a result of the Settlement, Galena will receive over $16.3 million in financial relief. Thus, Galena is positioned to recover a large portion of the damages alleged in the Action, and the Settlement eliminates the risks of continued litigation, including recovering significantly less than the alleged damages or none at all.

Last, even if Plaintiffs were successful at trial, there is no guarantee that any judgment would ultimately be sustained on appeal or by the trial court. For example, in *In re Apollo Grp., Inc. Sec. Litig.*, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008), the court on a motion or judgment as a matter of law overturned a jury verdict of $277 million in favor of stockholders.[14] Accordingly, the strength of Plaintiffs' case and the risks of continued litigation support approving the Settlement. *See, e.g., NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *16-17 (approving derivative settlement after analyzing risks of continued litigation).

## E.     The Expense, Complexity and Likely Duration of Further Litigation

Another factor militating in favor of the Settlement is the complexity, expense and likely duration of the litigation. *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *9. It is important to note

---

[14] *See also Johansen v. Combustion Eng'g., Inc.*, 170 F.3d 1320, 1340 (11th Cir. 1999) (affirming reduction of $45 million damages award to $4.35 million); *Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1477 (11th Cir. 1989) (affirming reduction of $18.5 million damages award to $2 million); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) (remanding $1.8 billion judgment for a new trial on damages, ultimately producing a much smaller award).

that "[s]tockholder litigation is notably difficult and notoriously uncertain even in the best of circumstances." *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 529 (E.D. Pa. 1990) (approving settlement of stockholder class action); *see also Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("Settlements of shareholder derivative actions are particularly favored because such litigation is notoriously difficult and unpredictable."). This Action would not have been an exception to this rule.

If not for the Settlement, the Action would have continued to be fiercely contested by the Parties. Continued litigation would have been complex, costly and of substantial duration. *See In re AOL Time Warner S'holder Derivative Litig.*, 2006 WL 2572114, at *5 (S.D.N.Y. 2006) (noting that "the prosecution of this action would require the Company to incur substantial costs" and that approving the settlement "will allow the Company to direct its full attention to its substantive business").[15] Conducting discovery would have presented a lengthy and expensive endeavor. Formal document discovery would need to be propounded, reviewed and completed. The breadth of document discovery would result in substantial expense for all Parties. Depositions would also have to be taken and Plaintiffs would likely need to depose many of the nine Individual Defendants, and likely numerous current and former employees of Galena. In addition, the Parties would need to designate experts and conduct expert discovery, as well as research, prepare and oppose any motions for summary judgment.

Lastly, a trial on the merits would have to be conducted, which would occupy the Parties and the Court for a substantial period of time. Any trial in this Action would likely be complex,

---

[15] *See also Ryan,* 2009 WL 18143, at *9 (noting that savings to the nominal defendant corporation in legal and other professional fees that would have been incurred but for the settlement of the litigation "directly benefit [the company] and its shareholders, just as a monetary judgment would, and these savings are properly considered by the Court when deciding whether a settlement is fair, reasonable, and adequate. Should the litigation proceed, any potential recovery would be diminished by the cost of achieving the judgment.").

expensive and time consuming.  *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).  A trial in this instance where Plaintiffs have brought derivative claims on behalf of Galena would present special complexities as it calls for a stockholder to step into the corporation's shoes.  *See Cohen v. Beneficial Ind. Loan Corp.*, 337 U.S. 541, 548 (1949) (explaining nature of derivative suits).  Moreover, any judgment favorable to Plaintiffs would likely be the subject of post-trial motions and appeals, which would prolong the Action for years with the ultimate outcome uncertain.  The Settlement eliminates these risks and provides Galena with immediate and certain financial relief which equates to a significant percentage of the total alleged insider trading proceeds.  *Velez v. Novartis Pharm.*, 2010 WL 4877852, at *13 (S.D.N.Y. Nov. 30, 2010) ("Settlement at this juncture results in a substantial and tangible present recovery, with the attendant risk and delay of post-trial motions and appeals."); *Maher*, 714 F.2d at 466 (derivative settlement approved where "the parties' conclusion that any possible benefit to [the company] from pursuing the causes of action would be more than offset by the additional cost of litigation was based on an intelligent evaluation of the case").  In addition, any judgment would not include the substantial governance benefits obtained through the Settlement.  And even a verdict is no guarantee that Galena and its stockholders would recover a significant portion of the alleged damages, a feat which has been achieved through this Settlement.  *See* Section IV.D, *supra*.

Plaintiffs' Counsel also considered the best interests of Galena, as the Action is brought on its behalf, including the risks that on-going litigation could result in loss or substantial diminution of available D&O insurance and financial hardship to Galena with risk that the Individual Defendants (absent insurance) would be unable to satisfy fully any judgment that might be entered in the Action and that the Defendants would also be unable to settle the related

Federal Securities Action.  *See* Stipulation §II.  Defendants' insurance carriers were asserting defenses to coverage, making collection of insurance either to reimburse Galena for settling the Federal Securities Action or in the event of a judgment against any insured individual subject to doubt.  As a result of the Settlement, Plaintiffs achieved a significant $15 million payment to be made to Galena by the D&O carriers, despite their reservation of rights.

In sum, the Settlement provides immediate financial consideration to Galena worth over $16.3 million, in addition to the cancellation of the 1.2 million improperly-granted stock options received by the director defendants, as well as significant governance reforms which will provide meaningful value to Galena and its stockholders for years to come.  The Settlement avoids years of potential delay, added expense and uncertainty.  *See, e.g., MRV*, 2013 WL 2897874, at *4 ("The Settlement Agreement, in addition to minimizing delay, guarantees Plaintiffs' recovery and the implementation of substantial corporate governance reforms. Thus, the risks and potential expenses of further litigation weigh in favor of final approval, consistent with the policy preferring settlement over further time consuming litigation.").

### F.    The Extent of Discovery Completed and the Stage of Proceedings

The stage of the proceedings and the amount of discovery completed is another factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement. *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *9.  Ninth Circuit law is clear that "formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 459 (9th Cir. 2000); *MRV*, 2013 WL 2897874, at *4.  Here, the proceedings have reached a stage where Plaintiffs' Counsel were able to make an intelligent evaluation of the Action and the propriety of the Settlement.

Before filing the Complaint and continuing thereafter, Plaintiffs' Counsel conducted an extensive investigation of the allegations asserted in the Action. Plaintiffs' Counsel obtained the 220 Documents and reviewed and analyzed voluminous public documents, including financial reports, press releases, and SEC filings, concerning the allegations in the Complaint. The Parties filed detailed amended complaints and fully briefed the Second Motion to Dismiss and Second Motion to Stay. In addition, the lengthy settlement negotiations and mediation process provided the Parties with an opportunity to conduct extensive analysis of their respective positions, including Plaintiffs obtaining and reviewing nearly 24,000 non-public documents in advance of the Mediation and analyzing the merits of Plaintiffs' claims and the Individual Defendants' potential defenses thereto. *See, e.g., AOL Time Warner*, 2006 WL 2572114, at *3 (negotiations "spanned an extended period of time and benefited from multiple proposals passed between the parties throughout this period"). In light of the stage of the proceedings, and the substantial work of counsel, Plaintiffs and Plaintiffs' Counsel were able to make an informed decision regarding the merits of the Settlement versus continued litigation. *See Mego Fin.*, 213 F.3d at 459. Thus, this factor supports approval of the Settlement.

### G.    The Experience and Views of Counsel

Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of those affected by the Settlement – here, Galena and Gurrent Galena Stockholders. *See MRV*, 2013 WL 2897874, at *5 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."). Plaintiffs and Defendants, acting by and through the Board, and the counsel for each, have independently considered the Settlement and all agree that it is in the best interests of the Company and Current Galena Stockholders. *See* Stipulation §§II-III; ¶2.3.

Plaintiffs' Counsel are experienced litigators with substantial experience litigating stockholder derivative actions.  *See* Stecker Decl. Exhibits A - J.  As a result of their unparalleled experience in these types of cases, Plaintiffs' Counsel have unique insight into the legal and factual issues presented.  Plaintiffs' Counsel used that expertise and experience to effectively and efficiently prosecute the Action and reach an excellent result for Galena and Current Galena Stockholders.  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Omnivision Techs.*, 559 F. Supp. 2d at 1043 (approving settlement of class action where plaintiffs' counsel had substantial experience in securities litigation and "[t]here [wa]s nothing to counter the presumption that Lead Counsel's recommendation is reasonable."). Furthermore, counsel for Defendants — King and Spalding LLP, Perkins Coie LLP and Debevoise & Plimpton LLP — are worthy adversaries.  The experience of counsel supports approval of the Settlement.

### H.    The Reaction of Current Galena Stockholders to the Settlement

Having received adequate notice of the Settlement, *see* Section II.B, *supra*, no Current Galena Stockholder has served Plaintiffs' Counsel with an objection to the Settlement (including the Fee Award and Incentive Awards) or notified Plaintiffs' Counsel of their intention to appear at the Settlement Hearing.  *See* Stecker Decl.  ¶56.[16]  Here, the absence of objections to the proposed Settlement from Current Galena Stockholders strongly supports final approval of the Settlement.[17]  *See, e.g., Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *5 (C.D. Cal. Dec. 8, 2015) ("By any standard, the lack of objections of the Class Members favors final approval.");

---

[16] Current Galena Stockholders have until April 7, 2016 to file any objections.  Of course, to the extent that any objections are received going forward, Plaintiffs' Counsel will address them once the deadline for objections passes.

[17]    Galena currently has approximately 181.75 million shares outstanding.    *See* http://finance.yahoo.com/q/ks?s=GALE+Key+Statistics, the Yahoo! finance page for Galena.

*MRV*, 2013 WL 2897874, at *5 (approving settlement of derivative action where "Plaintiffs [were] not aware of a single objection to any aspect of the Settlement.").

## V.  THE AGREED-TO FEE AWARD SHOULD BE FINALLY APPROVED AS FAIR AND REASONABLE

Galena and Current Galena Stockholders have received substantial benefits as a result of Plaintiffs' Counsel's efforts in initiating and prosecuting the Action and negotiating the Settlement.  Plaintiffs and Defendants agree that the Settlement confers substantial benefits upon Galena and is in the best interests of Galena and Current Galena Stockholders.  *See* Stipulation §§II-III, ¶2.3.  In recognition of the substantial monetary and non-monetary benefits conferred upon Galena by the Settlement, after negotiating the material terms of the Settlement, Plaintiffs' Counsel and the Company, with the substantial assistance of Judge Phillips, separately negotiated the amount of the Fee Award to be paid to Plaintiffs' Counsel.  As a result, the Board accepted Judge Phillips' mediator's proposal and will cause Galena's D&O insurer to pay Plaintiffs' Counsel the $5 million Fee Award to compensate Plaintiffs' Counsel for their efforts. *See* Stipulation ¶5.1; Stecker Decl. ¶¶19, 59.[18]  The Fee Award is to be paid on top of the $15 million payment to the Company.  The Parties' agreement on the amount of the Fee Award is an appropriate resolution of the issue of fees and expenses and is fair and reasonable in light of the factors the Ninth Circuit considers when awarding counsel fees and when cross-checked against Plaintiffs' Counsel's lodestar.  Thus, the Fee Award warrants the Court's approval.

---

[18] "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Where, as here, there is no evidence of collusion and no detriment to the parties, the Court should give "substantial weight to a negotiated fee amount." *Ingram v. Coca- Cola*, 200 F.R.D. 685, 695 (N.D. Ga. 2001); *see also Officers for Justice*, 688 F.2d at 625.

### A.    Legal Standard

A "[r]equest for attorney's fees must be made by a motion pursuant to Federal Rule of Civil Procedure 54(d)(2)[.]" *Arnett v. Bank of America, N.A.*, 2014 WL 4672458, at *11 (D. Or. Sept. 18, 2014). "Under the 'substantial benefit' doctrine, counsel who prosecute a shareholders' derivative case which confers benefits on the corporation are entitled to an award of attorneys' fees and costs." *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *12 (citing *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970)). "The basic principle behind this doctrine holds simply that stockholders who benefit from the litigious efforts of another should share in the costs of achieving that benefit." *La. State Emps.' Ret. Sys. v. Citrix Sys, Inc.*, 2001 WL 1131364, at *4 (Del. Ch. Sept. 19, 2001). "Ninth Circuit courts have consistently approved attorneys' fees and expenses in derivative [] actions where plaintiff's efforts resulted in significant monetary recoveries, as well as non-pecuniary benefits in the form of valuable corporate governance reforms." *NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *12-13. *See also MRV*, 2013 WL 2897874, at *6; *Rambus*, 2009 WL 166689, at *3.

As a threshold matter, the Fee Award was only negotiated after the Parties completed their settlement negotiations, and it is the product of a "mediator's proposal" made by Judge Phillips and accepted by the Parties. As set forth in the Stipulation, with the approval of the current Board in an exercise of its independent business judgment, Galena has agreed to pay the Fee Award based on the substantial benefits conferred upon the Company and Current Galena Stockholders by the Settlement. This exercise of the Board's independent business judgment strongly supports final approval of the Fee Award, because it is an objective indicator of the fairness and reasonableness of the Fee Award. Because "Courts will not substitute their business judgment for that of the directors, but will determine if the directors' decision was, on balance,

within a range of reasonableness" the Court's inquiry as to the fairness and reasonableness can end there. *Unitrin, Inc. v. Am. Gen. Corp.*, 651 A.2d 1361, 1386 (Del. 1995).

Still, the Ninth Circuit has enumerated several factors to consider when determining the reasonableness of attorneys' fees, including: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by plaintiffs' counsel; and (6) the awards made in similar cases. *MRV*, 2013 WL 2897874, at *6.[19]   As set forth below, the Fee Award is reasonable and appropriate in light of the factors the Ninth Circuit traditionally considers in determining reasonable fee awards.

### B.   The Agreed-to Fee Award Is Fair and Reasonable in Light of the Benefits Achieved and Awards in Similar Cases

The Supreme Court has stated that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Klein v. City of Laguna Beach*, 810 F.3d 693, 698-99 (9th Cir. 2016) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).   In this Action, Plaintiffs' Counsel's efforts produced a strong result: the Settlement includes substantial monetary and non-monetary benefits, for which the agreed-to Fee Award is fair and reasonable compensation.   "Under the common fund doctrine, a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Harger v. Dept. of Labor*, 569 F.3d 898, 903 n.8 (9th Cir. 2009).   Under the "common fund" doctrine, courts award attorneys' fees as a percentage of the fund created. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).   The

---

[19]   Delaware courts use similar factors: (1) the results accomplished for the benefit of the shareholders; (2) the efforts of counsel and the time spent on the case; (3) the contingent nature of the fee; (4) the difficulty of the litigation; (5) and the standing and ability of counsel involved. *In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 293 (Del. 2002) (citing *Sugarland Indus., Inc. v. Thomas*, 420 A.2d 142, 149 (Del. 1980)).

Ninth Circuit "benchmark" is to award 25% of the monetary benefit achieved to compensate plaintiffs' counsel in representative litigation. *See id.*; *Arnett*, 2014 WL 4672458, at *12.

Here, Galena will receive total financial consideration worth over $16.3 million as a result of the Settlement. *See* Section III.A, *supra*.; Stipulation ¶5.1   The $5 million agreed-to Fee Award will be paid in addition to, and not out of, the $16.3 million financial consideration, as the entirety of the Settlement's financial consideration will remain with Galena.  In the typical monetary settlement, the defendants or its insurance carrier (as is the case here) pay a fund and the court awards fees for the benefit of creating the fund based on a percentage of the entire fund, not the net amount that remains in the fund after the fees are paid.   Where the fee is paid on top of a settlement fund, the fee award should be considered as a percentage of the gross sum of the fund ***and*** the fee award, not as a percentage of the fund which represents the net amount to remain with the company.  For example, as Vice Chancellor Noble succinctly explained in *In re GSI Commerce, Inc. S'holder Litig*, when the negotiated attorneys' fees are to be paid in addition to the settlement fund, the court will "look at it under what I think is a more traditional fashion where we would add the attorneys' fees and expenses to the recovery and then use that as the denominator for finding a percentage of fees and expenses." *In re GSI Commerce, Inc. S'holder Litig.,* Consol. C.A. No. 6346-VCN, at 23 (Del. Ch. Nov. 15, 2011) (TRANSCRIPT) (Stecker Decl. Exhibit U).  Indeed, in *In re Jefferies Group, Inc. S'holders Litig.*, 2015 WL 3540662, at *2 (Del. Ch. June 5, 2015), Chancellor Bouchard rejected defendants' argument that the fee award should be calculated on a net basis and noted that the court "traditionally has granted fee awards in common fund settlements based on a percentage of the gross settlement value" and that defendants "were unable to identify a single case in which this Court made a considered judgment to award a fee based on a percentage of the net recovery that stockholders would

receive in a common fund case" *Id; see also*; *In re ArthroCare Corp. S'holder Litig.*, C.A. No. 9313-VCL, Settlement Hearing and Rulings of the Court, at 34 (Del. Ch. Nov. 6, 2014) (Stecker Decl. Exhibit V)  ("Now I have to factor in that the defendants are paying the fee, which is an additional benefit"); *Frederick v. Range Res.-Appalachia, LLC*, 2011 WL 1045665, at *8 (W.D. Pa. Mar. 17, 2011) (including "contribution to attorney fees" in calculating total amount of a common fund).  In sum, by negotiating the Fee Award in addition to the financial consideration, it is functionally equivalent to a larger all-in settlement fund, *i.e.*, $21.3 million ($16.3 million Settlement consideration plus $5 million Fee Award), where all fees are paid from that gross fund.

Accordingly, the $5 million agreed-to Fee Award, which will be paid on top of, not out of, the $16.3 million in financial consideration, represents 23% of the total monetary recovery ($21.3 million), which is less than the 25% benchmark and is therefore presumptively reasonable.  *See, e.g., NVIDIA*, 2009 U.S. Dist. LEXIS 24973, at *14-19 (approving fee in excess of 25% and noting that "the Ninth Circuit has held that a 28 percent fee award was reasonable where plaintiffs' counsel achieved an exceptional result…and obtained benefits beyond cash payment"); *In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *4 (N.D. Cal. Nov. 5, 2006) (approving fee of $8.85 million, which equaled 63% of the cash payment to the company); *Atmel*, 2010 WL 9525643, at *12 (approving fee of $4.94 million, which equaled 51% of the cash portion of the settlement); *Arnett*, 2014 WL 4672458, at *15 (approving fee of $7.75 million, which equaled 25% of the settlement fund).

In addition to the considerable and immediate financial benefits, as a result of the Settlement, Plaintiffs have also obtained valuable, long-term corporate governance reforms for Galena and Current Galena Stockholders.  The therapeutic benefits enjoyed by Galena and

Current Galena Stockholders as a result of the Settlement are clearly compensable.[20]    The

Settlement requires significant reforms to Galena's stock option granting practices.    These

reforms require, *inter alia*, that options be granted on pre-set dates with full public disclosure of

the methodology used to set those dates.    *See* Section III.B, *supra*.    The option granting reforms

also require additional oversight at meetings where options are granted, and that such granting

documents are preserved for at least seven years.    *Id*.    The reforms to Galena's compensation

practices produced under the Settlement directly address claims alleged in the Complaint and are

designed to prevent the recurrence of the type of misconduct alleged.    The Settlement also

provides for significant reforms to Galena's overall corporate governance practices and policies,

including reforms at both the Board and management level, which will improve the internal

policies and procedures of Galena.    *Id*.    These substantial reforms ***alone*** support the Fee Award,

irrespective of the considerable financial relief obtained.    For example, in *In re F5 Networks, Inc.*

*Derivative Litig.*, No. 06-0794 (W.D. Wash.), the district court awarded a $5 million fee in a

settlement that achieved corporate governance reforms similar to those achieved in this

Settlement, including, among other things: (i) reforms to the company's stock option granting

practices; (ii) requiring the retention of a compensation consultant; and (iii) reforms to the

---

[20] In the oft-cited *Chrysler Corp. v. Dann*, 223 A.2d 384 (Del. 1966) decision, the Delaware Supreme Court held that changes in corporate policy or a heightened level of protection for stockholders justifies an award of counsel fees.    *Id*. at 386*; see also Maher*, 714 F.2d at 466 (approving attorney's fees in a therapeutic derivative settlement because "influencing the future conduct may serve the interests of the corporation as fully as a recovery for past misconduct ..."); *Seinfeld v. Robinson*, 246 A.D.2d 291, 298 (N.Y. App. 1st Dep't 1998) (awarding fees in a derivative action which resulted in the corporation "implementing procedures that will prevent the exact sequence of events from reoccurring, [therefore] plaintiffs have furnished a benefit to all shareholders").

composition of the Board.  *See F5 Networks*, Order and Final Judgment (W.D. Wash. Jan. 6, 2011) (Stecker Decl. Exhibit W).[21]

Accordingly, Plaintiffs respectfully submit that the Fee Award is fair and reasonable in light of the substantial monetary and non-monetary benefits obtained in the Settlement.

### C.    The Other Ninth Circuit Factors Support the Unopposed Fee Award

#### 1.    The Risks of Litigation

As discussed in Section IV.D, *supra*, pursuing this litigation is inherently risky as "derivative lawsuits are rarely successful."  Accordingly, for the reasons stated above, this factor supports the reasonableness of the unopposed Fee Award.

#### 2.    The Skill Required and the Quality of Work

The skill required by Plaintiffs' Counsel to prosecute and settle the Action and their quality of work are additional factors that support Plaintiffs' requested Fee Award.  *See MRV*, 2013 WL 2897874, at *6 (approving unopposed fee and finding that "the successful prosecution of this action required knowledge and expertise in the fields of shareholder derivative litigation and options backdating.").   Plaintiffs' Counsel are nationally-recognized law firms that specialize in stockholder derivative litigation.  *See* Stecker Decl. Exhibits K - T.  Here, Plaintiffs' Counsel provided extensive, high-quality representation throughout the pendency of the Action.

---

[21] The reasonableness of the Fee Award is also supported by fee awards approved in other *governance-only derivative settlements* where there was no financial relief.  *See, e.g., City of Pontiac Gen. Employees' Ret. Sys. v. Langone*, No. 2006-cv-122304, Findings of Fact in Support of Order and Final Judgment (Fulton County, Ga. June 10, 2008) (Stecker Decl. Exhibit X) (awarding $14.5 million fee);  *In re Google Inc. S'holder Derivative Litig.*, No. CV-11-04248. Order (N.D. Cal. Jan. 21, 2015) (Stecker Decl. Exhibit Y) (awarding $9.9 million fee) *Unite Nat'l Ret. Fund v. Watts*, 2005 WL 2877899, at *5 (D.N.J. Oct. 29, 2005) (awarding $9.2 million fee); *Warner v. Lesar*, No. 2011-09567, Order Approving Settlement and Judgment (Tex. Dist. Ct., Harris Cnty. Oct. 1, 2012) (awarding $7.75 million fee) (Stecker Decl. Exhibit Z); *In re General Motors Corp. Derivative Litig.*, MDL No. 06-1749, Order Approving Settlement (E.D. Mich. Dec. 22, 2008) (Stecker Decl. Exhibit AA) (awarding $5.38 million fees).

As stated *supra*, Plaintiffs' Counsel expended significant time prosecuting and negotiating the Settlement of the Action.  *See* Section II, *supra*; Stecker Decl. ¶¶69.  The quality of Plaintiffs' Counsel and their efforts throughout the Action demonstrate that the Fee Award should be approved. *See Del Monte Foods Co. S'holder Litig.*, 2011 WL 2535256, at *13 (Del. Ch. June 7, 2011) ("More important than hours is effort, as in what plaintiffs' counsel actually did.") (citation and quotation omitted); *In re Warner Commun's Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work.") (citation omitted), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

### 3.    The Contingent Nature of the Fee and Burdens on Plaintiffs' Counsel

Plaintiffs' Counsel undertook the litigation of the Action with the expectation that they would have to devote many hours of hard work to the prosecution of a case involving complex factual and legal issues without any guarantee of successful resolution or of compensation for their efforts.  *See* Stecker Decl. ¶¶65-68.  Plaintiffs' Counsel diligently investigated the claims, commenced litigation of the Action, pursued the interests of their clients and nominal defendant Galena with appropriate aggressiveness, and successfully brought the Action to an amicable resolution.  *Id*. ¶15.   The prosecution of the Action involved the expenditure of significant resources, including the time spent by attorneys and professional staff, as well as the substantial expenses that were incurred during the litigation, for which Plaintiffs' Counsel received no compensation during the course of litigation.  *Id*. ¶69.   Accordingly, the contingent nature of Plaintiffs' Counsel's representation fully supports the requested Fee Award. *See MRV*, 2013 WL 2897874, at *6 ("the fifth factor is clearly satisfied here as well, as [t]he litigation was undertaken by Plaintiffs' Counsel on a wholly contingent basis with the understanding that they

were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the investment of time and money the case required.").

### D. The Unopposed Fee Award Is Supported by Plaintiffs' Counsel's Lodestar

A so-called "lodestar cross-check" also supports the reasonableness of the unopposed Fee Award. *See Roberti*, 2015 WL 8329916, at *7 ("The reasonableness of [the fee award] is confirmed by a cross-check with a lodestar comparison."); *Vizcaino*, 290 F.3d 1043 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.").[22] The "lodestar" is produced by multiplying the number of hours expended by counsel's hourly rate. *Roberti*, 2015 WL 8329916, at *6.[23]

Here, Plaintiffs' Counsel expended 6,105.10 hours and incurred $3,334,092.75 in lodestar during the successful prosecution of the Action. *See* Stecker Decl. ¶69, Exhibits K-T. In connection therewith, Plaintiffs' Counsel also incurred $153,081.02 in unreimbursed expenses in connection with the litigation of the Action. *Id.* After subtracting Plaintiffs' Counsel's expenses, the requested Fee Award represents a lodestar multiplier of 1.45.[24] The requested multiplier is eminently reasonable under Ninth Circuit law, which holds that lodestar multipliers

---

[22] "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized." *Young v. Polo Retail, LLC*, 2007 WL 951821, at *6 (N.D. Cal. Mar. 8, 2007).

[23] As courts in the Ninth Circuit recognize, there is no requirement to employ lodestar in a settlement which includes the creation of a monetary settlement fund. *Vizcaino*, 290 F.3d 1043 & n.5 ("the primary basis of the fee award remains the percentage method" and "it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement"). Nonetheless, a cross-check of Plaintiffs' Counsel's lodestar demonstrates that the unopposed Fee Award is reasonable.

[24] $5,000,000 - $153,081.02 = $4,846,918.98.  $4,846,918.98 ÷ $3,334,092.75 = 1.45.

can range from two to four or even higher.  *See, e.g., Vizcaino*, 290 F.3d at 1051 (affirming fee award equal to lodestar multiplier of 3.65, and listing 23 settlements and multipliers for each where the average multiplier is 3.28); *Buccallato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (approving 4.3 lodestar multiplier and listing cases approving multipliers ranging from 4.3 to 9.3); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *21 (N.D. Cal. Feb. 11, 2016) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.").

The time spent by Plaintiffs' Counsel is reasonable under the circumstances of this Action.  Plaintiffs' Counsel expended significant time and expenses in order to achieve the benefits of the Settlement.  These efforts include: (i) inspecting, reviewing and analyzing Galena's filings with the SEC; (ii) obtaining and reviewing the 220 Documents; (iii) filing multiple complaints; (iv) successfully opposing multiple motions to stay and motions to dismiss; (v) inspecting, reviewing, and analyzing over 53,000 pages of non-public documents provided by Galena in advance of the Mediation; (vi) researching corporate governance issues; (vii) researching the applicable law with respect to the claims asserted in the Action and potential defenses thereto; (viii) attending the all-day mediation session with Judge Phillips; and (ix) negotiating the Settlement of the Action over the course of many months.  Stecker Decl. ¶15.

In addition, the hourly rates charged by Plaintiff's Counsel are unquestionably reasonable.  *See Roberti*, 2015 WL 8329916, at *7 (Lead Counsel's attorney rates – between $525 to $975 – are reasonable given that each has at least 15 years of litigation experience (upwards of over 40 years of litigation experience), with the exception of ….the day-to-day litigation associate."); *Seinfeld v. Coker*, 847 A.2d 330, 337-38 (Del. Ch. 2000) (awarding fee amounting to more than $1,300 per hour where the litigation was not hard fought, expedited

proceedings were not sought, and no motion practice occurred). Indeed, the hourly rates charged by Plaintiffs' Counsel are comparable to the fees charged by Defendants' counsel.[25]

Accordingly, the lodestar "cross-check" confirms that the unopposed Fee Award is fair and reasonable compensation for the time and labor Plaintiffs' Counsel expended in achieving the benefits of the Settlement.

## VI.    THE INCENTIVE AWARDS SHOULD BE APPROVED

As provided for in the Stipulation, Plaintiffs Klein and Rathore may apply for incentive awards of $5,000 each, to be paid from the Fee Award. *See* Stipulation ¶5.6. As this Court has noted, "[i]ncentive awards are payments to class representatives for their service…in bringing the lawsuit…[and] are often taken from a common settlement fund." *Arnett*, 2014, WL 4672458, at *11. Here, "given the size of the….[settlement fund], the incentive awards are not unreasonably high" and should be approved. *See id.* (awarding incentive awards of $2,500 for each of the ten names representatives for a total incentive award of $25,000 and noting that "the incentive awards are reasonable and do not undermine the adequacy of the names representatives.").

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Settlement as fair, reasonable and adequate, approve the agreed-to Fee Award in the amount of $5 million as fair and reasonable, and approve the Incentive Awards as fair and reasonable.

---

[25] *See* National Law Journal, Billing Rates Across the County, Jan. 13, 2014 (available at http://www.nationallawjournal.com/id=1202636785489/Billing-Rates-Across-the-Country) (reporting partner billing rates at Gibson Dunn between $995 and $545 per hour and associate billing rates between $735 and $125 per hour; reporting partner billing rates at Perkins Coie between $940 and $320 per hour and associate billing rates between $595 and $215 per hour; reporting partner billing rates at Debevoise & Plimpton between $1,075 and $955 per hour and associate billing rates between $760 and $120 per hour).

Dated: March 31, 2016

**SLATER ROSS**

*/s/ Christopher A. Slater*
Christopher A. Slater, OSB # 97398
Michael J. Ross, OSB # 91410
Sovereign Hotel, 4th Floor
710 S.W. Madison Street
Portland, Oregon  97205
Telephone: (503) 227-2024
Facsimile: (503) 224-7299
cslater@slaterross.com
mjross@slaterross.com

*Local Counsel for Plaintiffs*

**THE WEISER LAW FIRM, P.C.**
Robert B. Weiser
Brett D. Stecker
James M. Ficaro
22 Cassatt Avenue, First Floor
Berwyn, PA 19312
Telephone: (610) 225-2677
Facsimile: (610) 408-8062
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jmf@weiserlawfirm.com

**THE WEISER LAW FIRM, P.C.**
Kathleen A. Herkenhoff
CA Bar ID 168562
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone:  (858) 794-1441
Facsimile:  (858) 794-1450
kah@weiserlawfirm.com

**HYNES KELLER & HERNANDEZ, LLC**
Michael J. Hynes
Ligaya Hernandez
Hynes Keller & Hernandez, LLC
1150 First Avenue, Suite 501
King of Prussia, PA 19406
Telephone: (610) 994-0292
Facsimile: (914) 752-3041
mhynes@hkh-lawfirm.com
lhernandez@hkh-lawfirm.com

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
685 3rd Avenue
26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile: (212) 983-9331

**FEDERMAN & SHERWOOD**
William B. Federman
Sara E. Collier
10205 N Pennsylvania Ave
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com
sec@federmanlaw.com

*Counsel for Plaintiffs Klein and Rathore*

**PRICKETT, JONES & ELLIOTT, P.A.**
Michael Hanrahan
Paul A. Fioravanti, Jr.
Kevin H. Davenport
1310 N. King Street
Wilmington, Delaware 19801
Telephone: (302) 888-6500
Facsimile: (302) 658-8111
Mhanrahan@prickett.com
PAFioravanti@prickett.com
KHDavenport@Prickett.com

**KESSLER TOPAZ
    MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
Matthew A. Goldstein
280 King of Prussia Road
Radnor, Pennsylvania 19087
Telephone: (610) 667-7706
Facsimile: (267) 948-2512
ezagar@ktmc.com
rwinchester@ktmc.com
mgoldstein@ktmc.com

**GRANT & EISENHOFER P.A.**
Stuart Grant
Cynthia Calder

123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100
sgrant@gelaw.com
ccalder@gelaw.com

**GARDY & NOTIS, LLP**
James S. Notis
Kira German
Tower 56
126 East 56th Street, 8th Floor
New York, NY 10022
Telephone: (212) 905-0509
Facsimile: (212) 905-0508
jnotis@gardylaw.com

**SQUITIERI & FEARON LLP**
Lee Squitieri
32 East 57th Street, 12th Floor
New York, NY 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
lee@sfclasslaw.com

*Counsel for Plaintiffs Fuhs and Spradling*